UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IVAN BONNER,<br><br>                  Petitioner,<br><br>       vs.<br><br>ROBERT ERCOLE, Superintendent, Green Haven Correctional Facility,<br><br>                  Respondent. | No. 9:07-cv-00399-JKS<br><br>MEMORANDUM DECISION |

      Petitioner Ivan Bonner, a/k/a Ivan Vonner, a state prisoner appearing *pro se*, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Bonner is currently in the custody of the New York Department of Correctional Services, incarcerated at the Green Haven Correctional Facility.

I.  BACKGROUND/PRIOR PROCEEDINGS

      Bonner was convicted in the Albany County Court, upon his plea of guilty, of one count of Robbery in the Second Degree (N.Y. Pen. Law § 160.10(1)), a class C felony.  Bonner was sentenced to a determinate prison term of 14 years, plus 5 years of post-release supervision.

      Bonner timely appealed his conviction to the Appellate Division, Third Department, which affirmed his conviction on September 22, 2005, and the New York Court of Appeals denied leave to appeal on January 20, 2006.  *People v. Bonner*, 802 N.Y.S.2d 1184 (N.Y.A.D. 2005), *lv. denied*, 844 N.E.2d 795 (N.Y. 2006) (Table), *lv. denied sub nom.*, *People v. Vonner*, 844 N.E.2d 349 (N.Y. 2006) (Table).

      On June 28, 2006, Bonner filed a motion in the Albany County Court under N.Y. Criminal Procedure Law § 440.20 to set aside his sentence, which the County Court denied July 13, 2006.  On March 21, 2007, Bonner filed a motion under N.Y. Criminal Procedure Law § 440.10 in the Albany County Court to set aside his conviction, which the County Court denied on April 18, 2007, and the Appellate Division denied leave to appeal on July 9, 2007.

Bonner timely filed his petition for relief in this Court on April 11, 2007.

## II.  STANDARD OF REVIEW

Because Bonner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or  "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court.  *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).  State court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

To the extent that Bonner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief.  This Court may only address violations of federal law.  28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.  Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  It is also presumed that the state court knew and correctly applied state law.  *See Walton v. Arizona,* 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

## III.  GROUNDS RAISED/DEFENSES

In his petition before this Court, Bonner raises four grounds:  (1) guilty plea was not knowingly, intelligently or voluntarily entered; (2) deprivation of his right to testify before the grand jury; (3) ineffective assistance of trial counsel; and (4) guilty plea induced by

prosecutorial fraud. In his traverse Bonner abandons his second and third grounds, leaving the first and fourth.

Respondent concedes that Bonner exhausted his state court remedies on the first and fourth grounds.

## IV. DISCUSSION

The two grounds at issue before this Court both arise out of the plea colloquy and the sentence imposed. The plea colloquy (relevant excerpts only) and the sentencing hearing are set forth in the Appendix. Also included in the Appendix is the transcript of the hearing held on November 25, 2002, at which the State withdrew its first offer of a plea-bargain.

<u>Ground 1: Failure to Advise of Five-Year Post-release Supervision</u>.

Bonner argues that the failure of the trial court to inform him that he was subject to a five-year period of post-release supervision rendered his plea involuntary. In rejecting Bonner's argument, the Appellate Division held (802 N.Y.S.2d at 264–65):

> Defendant contends that pursuant to this Court's decision in *People v. Goss,* 286 A.D.2d 180, 733 N.Y.S.2d 310 [2001], his sentence must be vacated because he was not advised prior to pleading guilty that the sentence imposed would include a period of postrelease supervision and a surcharge. However, the rule set forth in *Goss* applies to situations in which the defendant was "deprived of the benefit of his [or her] bargain when the period of postrelease [*sic*] supervision was automatically added to the determinate term" agreed to (citations omitted). Here, defendant was not promised a specific sentence; he was only assured that County Court would give fair consideration to all of the information before it in imposing sentence and that he would not be sentenced as a persistent felony offender or persistent violent felony offender. Thus, the imposition of a period of postrelease [*sic*] supervision could not have had any impact on his decision to plead guilty (citation omitted). Moreover, imposition of a mandatory surcharge does not warrant setting aside defendant's sentence (citations omitted).

The Appellate Division further found that Bonner made a "knowing, voluntary and intelligent plea and waiver of his right to appeal." (802 N.Y.S.2d at 265).

The precise issue before this court is whether the omission of the fact he would receive a term of supervised release rendered Bonner's plea involuntary. The Second Circuit has held:

> A guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). It is a settled principle of federal constitutional law that a guilty plea violates due process and is therefore

> invalid if not entered voluntarily and intelligently. *Brady v. United States,* 397
> U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Boykin v. Alabama,* 395
> U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A plea of guilty is
> considered voluntary and intelligent if the defendant enters the plea with full
> awareness of its "direct consequences." *Brady*, 397 U.S. at 755, 90 S.Ct. 1463
> (citation omitted).
>
> The Supreme Court has not defined which consequences of a guilty plea
> are "direct" and therefore must be disclosed to the defendant, and which
> consequences are collateral and need not be conveyed to the defendant prior to his
> plea. However, this court has joined several of its sister circuits in defining direct
> consequences as those that have a "definite, immediate and largely automatic
> effect on the range of the defendant's punishment," and designating other
> consequences as collateral. *United States v. United States Currency,* 895 F.2d
> 908, 915 (2d Cir.1990) (citation and internal punctuation omitted).

*Wilson v. McGinnis*, 413 F.3d 196, 198–99 (2d Cir. 2005).

In *Wilson* the Second Circuit held that the failure to inform a defendant that the sentence imposed on his guilty plea would run consecutive with a previously imposed undischarged state sentence was a "collateral consequence" that did not render defendant's plea involuntary, unknowing or unintelligent. *Id.*, 413 F.3d at 200. Because the New York statute providing for the imposition of consecutive sentences, N.Y. Penal Law § 70.30[1](b), included exceptions that provided the sentencing court with sufficient discretion not to impose consecutive sentences, *Wilson* rejected the "contention that [it] had such a 'definite, immediate and largely automatic' effect on the range of punishment as to constitute a direct consequence of the plea." *Id.* In *Zhang v. United States*, 506 F.3d 162, 167 (2d Cir. 2007), the Second Circuit, citing Federal Rule of Criminal Procedure 11(b)(1)( H), termed the imposition of supervised release a direct consequence of a guilty plea.[1] *See also United States v. Blackburn*, 461 F.3d 259, 265 n.5 (2d Cir. 2006) (stating "term of supervised release (a direct consequence of his conviction)").

In this case Bonner, as second felony offender convicted of a class C felony, was subject to a determinate sentence of not less than 8 nor more than 15 years. N.Y. Pen. Law § 70.04[3](c). In addition, Bonner was subject to a statutorily mandated period of post-release

---

[1] Although Rule 11, adopted by the United States Supreme Court under its supervisory powers, is not a constitutional rule, it is clearly indicative of those matters that the Supreme Court considers to be direct consequences of a guilty plea.

MEMORANDUM DECISION
*Bonner v. Ercole*, 9:07-cv-00399-JKS                4

supervision of five years. N.Y. Pen. Law § 70.45[2]. Unlike the statute at issue in *Wilson*, § 70.45[2] is not discretionary. Although there is a lack of controlling federal authority directly on point, the New York Court of Appeals recently expressly held that the imposition of post-release supervision is a direct consequence of a guilty plea and the failure of the court to advise the defendant of that consequence rendered the plea involuntary, unknowing and unintelligent. *People v. Hill*, 879 N.E.2d 152, 154 (N.Y. 2007); *see also People v. Rivera*, 858 N.Y.S.2d 825, 828 (N.Y.A.D. 2008) (same); *People v. Boyd*, 856 N.Y.S.2d 71, 74 (N.Y.A.D. 2008) (same). While not binding on this Court in a federal habeas proceeding regarding federal constitutional law, the holdings of the New York Courts in *Hill-Rivera-Boyd*, which are consistent with *Wilson* and *Zhang*, are not only persuasive but declarations that the effect of the New York statute, § 70.45[2], is a direct consequence of a guilty plea.[2]

Respondent argues that since at an earlier time involving an earlier offer from the State Bonner was informed by the court that under that offer he was "to be sentenced to no more than a ten year determinate sentence, post-release supervision being a mandated minimum, second felony offender," Bonner had sufficient notice of the fact that he would receive post-release supervision as part of the sentence.[3] Bonner counters that although he was aware of the 15-year term of imprisonment through counsel, counsel never advised him of the post-release supervision requirement. In reading the transcript of those proceedings it is not clear that Bonner had any true understanding of the post-release requirement. Bonner unequivocally stated he was willing to take the 10 years but not willing to testify against his co-defendant. Bonner says nothing about the post-release supervision. Based on the record before it, the Court cannot say with any reasonable degree of conviction that Bonner had a full and complete understanding of the requirement for post-release supervision.

Even accepting that the imposition of *some* period of post-release supervision was disclosed, does not save the day for Respondent. As the Appellate Division, Third Department, found in *Rivera*, vacatur of a plea is necessary where the *duration* of the post-release is not

---

[2] As the Court finds the New York decisions persuasive regarding federal constitutional law at the time Bonner entered his plea not controlling, no issue of retroactivity arises.

[3] See Appendix, Transcript of the November 25, 2002, hearing.

disclosed as part of the plea colloquy. The mere disclosure that a period of post-release supervision would be imposed is insufficient. Nor does the Court find persuasive the fact that Bonner acknowledged and agreed that as long as the trial court gave "full and fair consideration to all the information submitted to me before sentence, then in essence you have got what you bargained for." From the perspective of Bonner, what he bargained for was a sentence not to exceed 15 years and not to be compelled to testify against his co-defendant. Nothing in the record suggests that Bonner bargained for or acquiesced to a 5-year period of post-release supervision in exchange for his guilty plea.

Because the Trial Court failed to advise Bonner of the fact that upon entry and acceptance of his guilty plea he would be subject to a five-year mandatory term of post-release supervision, a direct consequence of his plea, the decision of the Appellate Division, Third Department, was contrary to established law as determined by the Supreme Court of the United States. *Brady v. United States*, 397 U.S. at 755.

Bonner is entitled to relief on his first ground. Having found for Bonner on this ground, the Court finds it unnecessary to address the remaining (fourth) ground.

## V.  ORDER

**IT IS ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **GRANTED**.

**IT IS FURTHER ORDERED THAT**, unless within sixty (60) days of the date the judgment in this case becomes final, *i.e.*, no longer open to attack on direct appeal, the Albany County Court vacates the guilty plea of petitioner Ivan Bonner, a/k/a Ivan Vonner, Respondent must release petitioner Ivan Bonner, a/k/a Ivan Vonner, from custody.

**IT IS FURTHER ORDERED THAT** nothing in this order is to be construed as prohibiting the People of the State of New York or the Albany County Court from further proceedings on the indictment consistent with applicable New York law.

The Clerk of the Court to enter final judgment accordingly.

Dated:  August 25, 2008.

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

APPENDIX

**EXCERPTS FROM PLEA COLLOQUY**
[DOCKET 18-3, PP. 96 – 98, 101 – 102]

THE COURT:  Ivan Bonner.

Let's bring up Mr. Bonner, please.

Let the record reflect this is Ivan Bonner.  He is here with his attorney, Mr. Dorsman.  People represented by Mr. Calderon.

This matter comes on after much discussion had among the attorneys and the Court.  The result is as follows: should  defendant plead guilty to the charge of robbery in the second degree, no promise other than I'll listen very carefully to all the information that your attorneys submit to me, the presentence report memorandum by the defense.  The Court agrees there will be no effort made to seek to have him classified as a persistent felony offender or persistent violent felony offender.  that your understanding Mr. Calderon:?

MR. CALDERON:  It is, your Honor.

THE COURT:  That the People have agreed they would not seek to call him to testify at the trial of the co-defendant.  It is conditioned by the fact there must be an allocution sufficient sustain the plea here.  Is that your understanding?

MR. DORSMAN:  Yes, your Honor.

THE COURT:  Mr. Bonner, is that what you want to do.

THE DEFENDANT:  Yeah.

\*   \*   \*   \*

THE COURT:  And you give up your right to appeal this process we are going through.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Bottom line, if upon entry of  your plea here I set sentence for several weeks to get a presentence report, as long as I give full and fair consideration to all the information submitted to me before sentence, then in essence you have got what you bargained for.  Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT:  Other than what I've just said to you, has anyone made you any other kind of promise in order to get you to plead guilty here?

THE DEFENDANT: No.

**TRANSCRIPT OF SENTENCING**
[DOCKET 18-3, PP. 106 – 109]

THE COURT:  Ivan Bonner is here with Mr. Dorsman.  The People are represented by Mr. Torncello.  This matters [*sic*] comes on for sentencing, the defendant previously on the 8th of this April having pled guilty to robbery in the second degree.

A pre-sentence report now having been prepared, have you had a full chance to review it, Mr. Dorsman?

MR. DORSMAN:  Yes, I have, Your Honor.

THE COURT:  Any factual discrepancies which you'd wish to note?

MR. DORSMAN:  No, Your Honor.

THE COURT: Mr. Torncello, the People wish to be heard in reference to sentence?

MR. TORNCELLO: No, thank you.

THE COURT:  Mr. Dorsman?

MR. DORSMAN:  Your Honor, I'm just going to review the Special Information for a minute with my client.

(Whereupon, Counsel and the Defendant confer.)

THE COURT: Let the record reflect that Mr. Torncello has handed up to the Court and provided a copy of a Special Information charging a predicate offense, namely a conviction for criminal possession of a Controlled substance in the third degree.  Defendant got four and a half to nine years, and on criminal possession of a weapon got three and a half to seven years, and that was in 1989 out of Queens, and those sentences would have carried him within the 10-year period in which to determine predicate status.

MR. DORSMAN:  Your Honor, I have gone over the information with him and he doesn't deny that he's the same person that was previously convicted, and there are no appeals or anything pending, so I don't know of any ground or constitutionality or otherwise.

THE COURT:  And he was represented by an attorney at that time, correct?

THE DEFENDANT :  Yeah

MR. DORSMAN:  Yes.

THE COURT:  Based upon your statement, as well as those of your client, for purposes of today's proceedings, I declare him to be a second felony offender.

Mr. Torncello, the people wish to be heard further?

MR. TORNCELLO:  No, thank you, Your Honor.

THE COURT:  Mr. Dorsman?

  MR. DORSMAN:  Your Honor, I did have a chance to review the presentence report.  I know my client has a lengthy criminal history.  However, he did come forward on this case and admit his guilt.  I'd ask the Court to consider less than 15 years.

  THE COURT:  Mr. Bonner, did you wish to be heard.

  THE DEFENDANT:  Yes, I would.  I'd just like to say -- I'd like to apologize to the victims and to my family.

  THE COURT:  Any legal cause to show why sentencing should not now be pronounced?

  Mr. DORSMAN:  No, Your Honor.

  THE COURT:  Having reviewed carefully the pre-sentence report, I find no basis to vary from the negotiated plea.  Accordingly, it is the judgment of this Court that you be sentenced to a determinate sentence of 14 years with a five-year period of post-release supervision imposed.  Mandatory surcharge and victim impact fee must be and are imposed, deducted from inmate's funds.

  Defendant remanded.

  THE DEFENDANT:  I thought copped out to 15.

  THE COURT: What?

  THE DEFENDANT:  I thought I pled guilty to 15.

  THE COURT: I just gave you 14.  Do you want me to give you 15 instead?

  THE DEFENDANT:  You said 14 what?

  THE COURT:  Five years post-release.

  MR. DORSMAN  Five years post-release supervision.

  (Whereupon, the proceedings in the above-entitled matter were concluded, this date.)

### TRANSCRIPT NOVEMBER 25, 2002 HEARING

[DOCKET 18-3, PP. 18 – 19]

  THE COURT:  Ivan Bonner.

  Let the record reflect this is Ivan Bonner.  This case was conferenced extensively over the last couple weeks.  An offer was made at the end of last week and we put it on today for a response, namely that should defendant plead guilty to robbery in the second degree, to be sentenced to no more than a ten year determinate sentence, post-release supervision being a mandated minimum, second felony offender.  Even though defendant has at least four prior felony convictions I would not seek to have him treated as a persistent felony offender.

  This plea was conditioned upon, if necessary, truthful testimony at the trial of his co-defendant. Mr. Dorsman.

THE DEFENDANT: Your Honor, I was going to taken ten years flat. They didn't say nothing to me about testifying again. I was explaining to my lawyer that statement. I don't know nothing about the statement. If you look at the videotape of the robbery, your Honor --

THE COURT: Sir, anything you say here can be used against you. Excuse me. Excuse me.

THE DEFENDANT: I -- I --

THE COURT: Don't start talking about it because if you don't take a plea the things you're saying here can be used against you at your trial if you reject the plea bargain. So don't say a word with respect to the transaction, please. It's for you to accept or reject the plea bargain. Simple as that, sir.

THE DEFENDANT: I want to take ten years. Yes.

THE COURT: But it's conditioned upon if McEaddy doesn't plead, I don't know if he is going to or not, that it's necessary for you to testify at trial.

THE DEFENDANT: But what I'm saying to you, your Honor, is that I didn't do anything with McEaddy. I don't have --

THE COURT: Fair enough. What's your position?

MR. MUlA: Judge, especially in light of his comments at this point, without his cooperation the People can't take this plea and the plea offer at this time is withdrawn.

THE COURT: Okay.

(Matter concluded this date)