UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IVAN BONNER,<br><br>      Petitioner,<br><br>    vs.<br><br>ROBERT ERCOLE, Superintendent, Green Haven Correctional Facility,<br><br>      Respondent. | No. 9:07-cv-00399-JKS<br><br>MEMORANDUM DECISION |

    Petitioner Ivan Bonner, a/k/a Ivan Vonner, a state prisoner appearing *pro se*, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Bonner is currently in the custody of the New York Department of Correctional Services, incarcerated at the Green Haven Correctional Facility.

I. BACKGROUND/PRIOR PROCEEDINGS

    In his petition, Bonner raised four grounds for relief (1) guilty plea was not knowingly, intelligently or voluntarily entered; (2) deprivation of his right to testify before the grand jury; (3) ineffective assistance of trial counsel; and (4) prosecutorial fraud and breach of the plea agreement. Bonner abandoned his second and third grounds in his traverse, and this Court proceeded on the first and fourth grounds. This Court, in a Memorandum Decision, found in favor of Bonner on the first ground, declined to address the fourth, and granted Bonner's petition. Judgment was entered accordingly.[1] Respondent appealed to the Court of Appeals for the Second Circuit, which reversed and remanded for consideration of the fourth ground.[2] The background and prior proceedings preceding this Court's initial decision are well known to the parties and are set forth in that Memorandum Decision. Accordingly, they will not be repeated here.

---

[1] Docket Nos. 25, 26.

[2] Docket No. 32.

## II.  GROUND PRESENTED/DEFENSES

The sole remaining ground to be addressed by the Court is his fourth ground: prosecutorial fraud and that the plea agreement was breached by the People.  Respondent has asserted no affirmative defense.[3]

## III.  STANDARD OF REVIEW

Because Bonner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[6]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[7]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[8]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of

---

[3] *See* Rules—Section 2254 Cases, Rule 5(b).

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404–06 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70–75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412.

[6] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, ___, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[7] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[8] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[9]

In applying this standard, this Court reviews the last reasoned decision by the state court.[10]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[11]

To the extent that Bonner raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[12]  A federal court must accept that state courts correctly applied state laws.[13]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[14]  A federal court may not issue a habeas writ based upon a perceived error of state law unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[15]

## IV.  DISCUSSION

Bonner argues that by the clear terms of the plea agreement he was to plead guilty to second degree robbery, that he would not be declared a persistent felony offender or persistent violent felony offender, and the People would not "seek" to call him to testify at the trial of a codefendant.[16]  The record clearly reflects that Bonner was sentenced as a second-felony

---

[9] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[10] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

[11] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[12] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[13] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), overruled on other grounds by *Ring v. Arizona*, 536 U.S. 584 (2002)).

[14] *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

[15] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[16] Relevant excerpts from the plea colloquy are contained in the Appendix.

offender, not as either a persistent felony offender or as a persistent violent felony offender.[17] The same prosecutor who made the plea agreement with Bonner also executed an affidavit seeking an order directing the New York Department of Correctional Services to deliver Bonner to testify at the trial of the codefendant. There is no evidence in the record that Bonner testified, and Bonner tacitly admits that he did not testify. Nevertheless, Bonner contends that in executing the affidavit in support of the issuance of the production order, the prosecutor committed fraud on the court, and the issuance of the order constituted a breach of the terms of his plea agreement. Bonner argues that, as a result, he should be allowed to vacate his guilty plea or have the original plea offer specifically enforced.[18] Bonner raised this issue in a motion under New York Criminal Procedure Law § 440.10. In denying his motion, the Albany County Court held:[19]

> In the previous motion, defendant asserted that his plea agreement was that he was not required to testify at the trial of his codefendant, Melvin McEaddy, and the agreement was violated by the prosecutor when he was subpoenaed to testify at the trial. Defendant requested that he be re-sentenced to the original plea offer of l0 years which was offered and rejected earlier in the proceedings.
>
> The transcripts submitted by defendant reveal that defendant was initially offered a plea bargain which called for a sentence of 10 years and his cooperation in testifying at the codefendant's trial. Defendant rejected that offer as he did not want to testify at the trial of the codefendant and that offer was therefore withdrawn. He subsequently agreed to accept a different plea offer which did not require his cooperation. He was sentenced to the 14 year term and incarcerated. In October 2005, the prosecutor obtained an order to produce defendant from the correctional facility for purposes of a criminal proceeding against McEaddy on October 31, 2005, the date scheduled for that trial to commence. However, court records indicate that defendant did not testify at the trial.

---

[17] Relevant excerpts from the sentencing hearing are set forth in the Appendix. Bonner does not allege that he was sentenced in violation of the agreement.

[18] In the earlier plea offer, Bonner was to serve 10 years, conditioned upon his testimony at the trial of his co-defendant, if necessary. The transcript of the hearing held on November 25, 2002, at which the State withdrew its first offer of a plea-bargain that Bonner now seeks to specifically enforce is contained in the Appendix.

[19] The Appellate Division, Third Department, summarily denied leave to appeal without opinion or citation to authority. Accordingly, the decision of the Albany County Court is the last reasoned state court decision.

MEMORANDUM DECISION
*Bonner v. Ercole*, 9:07-cv-00399-JKS                    4

Relief was denied on the previous motion in that there was no error in the sentence and thus no ability for the court to change the sentence (see, CPL 440.20). It was noted that the appropriate motion to be made in that type of situation was a motion to vacate the conviction based perhaps upon the purported misconduct or misrepresentation of the prosecutor in not adhering to the plea agreement or due to the plea not having been voluntarily entered. The remedy to be afforded in appropriate circumstances in that instance would be to permit the withdrawl [*sic*] of the plea and afford defendant a trial or give him the benefit of his plea bargain. It was stated that even if such a motion had been made, that relief would not be appropriate under the circumstances of this case. The earlier plea offer with a proposed sentence of 10 years was conditioned on defendant testifying, which is something that he did not do. Defendant did not assert that he was pressured to testify in contravention of the plea agreement. He merely stated that he was subpoenaed. He did not state what occurred upon his presumed arrival at the courthouse. In fact, defendant did not even indicate that he did not testify. Therefore, there was no basis to afford defendant the benefit of an earlier plea and sentence offer which he rejected, and which, in considering subsequent circumstances, he did not fulfill what would have been his obligation pursuant to the original offer.

Defendant has now made a motion to vacate the conviction for the reasons stated above. He included a copy of the order to produce to bring him from the correctional facility to the courthouse for the trial of the codefendant. He states that he seeks to have the conviction vacated or for specific performance of the original plea agreement.

It is accepted as true that defendant was brought to the courthouse at the time of trial of the codefendant. He argues that because he was brought to the courthouse it appears that he was cooperating with the prosecution. This is something that he did not want to do and he claims that he was harmed by the actions of the prosecutor. The People's response does not indicate the reason for bringing defendant to the courthouse. However, court records indicate that defendant did not testify at the trial.

In any event, causing defendant to appear at the courthouse, by itself, does not amount to prosecutorial misconduct and did not violate the plea agreement. He did not testify, or agree to do so, as was required by the first plea offer. Such circumstances do not merit a change in the plea agreement so as to give him the benefit of the first plea offer, which was rejected, which required him to testify in court against the codefendant. Defendant has not stated that he wishes to withdraw his plea and face trial on the indictment and thus such a remedy is not considered.

>    Defendant's motion is denied.  This shall constitute the decision and order of this court.[20]

Under Supreme Court precedent, to constitute prosecutorial misconduct, the prosecutor's conduct must "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process."[21]  Here the plea bargain was made in April 2003, the sentence was imposed in May 2003, and the affidavit seeking issuance of the order compelling Bonner's delivery by the New York Department of Correctional Services was executed in October 2005.  It is unclear how an action taken two and one-half years after the plea was entered could possibly affect the voluntariness of the plea sufficient to warrant allowing that plea to be vacated.  Indeed, Bonner's argument is that the fraud or misrepresentation was made in connection with the application for the production order, not in inducing the plea.  This Court cannot, under the facts of this case, find that the decision of the Albany County Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[22]

Bonner contends that in simply executing the affidavit, the prosecutor breached the terms of the plea agreement, not to "seek" Bonner's testimony at the trial of his codefendant.  In *Santobello v. New York*,[23] the Supreme Court held that accepting a guilty plea:

>    [M]ust be attended by safeguards to insure the defendant what is reasonably due in the circumstances.  Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.[24]

---

[20] Docket No. 18, Exhibit J, pp. 4–7.

[21] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Jenkins v. Artuz*, 294 F.3d 284 (2d Cir. 2002).

[22] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404–06 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70–75 (2003) (explaining this standard).

[23] *Santobello v. New York*, 404 U.S. 257 (1971).

[24] *Id.* at 262.

The Supreme Court recently applied *Santobello* in *Puckett v. United States*:[25]

> When a defendant agrees to a plea bargain, the Government takes on certain obligations. If those obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement, allowing him to take back the consideration he has furnished, *i.e.*, to withdraw his plea. But rescission is not the only possible remedy; in *Santobello* we allowed for a resentencing at which the Government would fully comply with the agreement—in effect, specific performance of the contract. 404 U.S., at 263, 92 S.Ct. 495. In any case, it is entirely clear that a breach does not cause the guilty plea, when entered, to have been unknowing or involuntary. It is precisely because the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain.[26]

Thus, assuming there was a breach of the plea agreement, Supreme Court precedent allows one of two possible remedies—rescission, *i.e.*, withdrawal of the plea, or specific enforcement of the plea agreement, depending upon the circumstances. What Supreme Court precedent does not allow is specific enforcement of a proposed plea agreement that was either withdrawn by the Government or rejected by the defendant. The initial plea offer was never consummated, and Bonner never performed one of the conditions upon which that offer was premised—testimony in the trial of the codefendant. Consequently, as the Albany County Court correctly held, Bonner is not entitled to the benefits of the first plea offer, a 10-year sentence. That leaves two permissible remedies—withdrawal of his guilty plea *or* specific performance of the plea agreement that was actually consummated.

Under the facts of this case, specific performance of the plea agreement is not possible. To the extent that the prosecutor breached the agreement by seeking the order to produce Bonner at the trial of his codefendant, that cannot be undone. On the other hand, because Bonner did not testify at his codefendant's trial, there is nothing left to enforce. Therefore, the sole viable remedy that this Court may grant is withdrawal of the plea.[27]

---

[25] 555 U.S. ___, 129 S. Ct. 1423 (2009).

[26] *Id.* at 1430.

[27] This Court notes that it appears from the record that Bonner eschewed seeking that remedy in the state courts. That does not, however, necessarily preclude this Court from granting that relief. *See* 28 U.S.C. § 2243 ("The Court shall summarily hear and determine the facts and dispose of the matter as law and justice require.").

The threshold issue is whether there was a breach of the plea agreement. The Albany County Court found no breach occurred. Plea agreements are reviewed *de novo* applying principles of contract law.[28] In determining whether a plea agreement was breached, the Court looks to the reasonable understanding of the parties as to the terms of the agreement.[29] The Government is bound by its plea agreement and is responsible for its material breach.[30]

For the purposes of deciding this issue, the Court assumes that the People "agreed they would not seek to call [Bonner] at the trial of the codefendant."[31] Bonner's arguments center upon the literal common meaning of the word "seek," *i.e.*, "(1) To search for (2) To endeavor to obtain or reach (3) To try: sought to escape."[32] This Court agrees that the action of the prosecutor in obtaining the production order violated the literal, common meaning of the verb "seek." That does not, however, end the inquiry. There is a *de minimis* exception to granting relief for breaches of plea agreements by the Government. There is no "need for a remedy for a breach of a plea agreement where the violation is so minor that it does not cause the defendant to suffer any meaningful detriment."[33] "In assessing whether a defendant suffered a meaningful detriment, the critical question is what the defendant reasonably understood to be the terms of the plea agreement, and whether his or her reasonable expectations have been fulfilled."[34] In this case, as implicitly found by the Albany County Court, Bonner's reasonable expectation was that he would not have to testify at the trial of the codefendant and that expectation was fulfilled. The Supreme Court has never held that a nonmaterial, incidental breach of a plea agreement, as

---

[28] *See United States v. Brumer*, 528 F.3d 157, 158 (2d Cir. 2008).

[29] *Id.*

[30] *See United States v. Griffin*, 510 F.3d 354, 367 (2d Cir. 2007).

[31] Review by this Court is severely restricted by the fact that the actual plea agreement by and between Bonner and the People is not part of the record. What is before this Court is the statement of the trial court at the plea colloquy, which the record reveals occurred as a result of earlier discussions among the attorneys and the court that are not part of the record.

[32] Derived from the *American Heritage Dictionary*.

[33] *United States v. Laval*, 404 F.3d 144, 155 (2d Cir. 2005) (citing *United States v. Brody*, 808 F.2d 944, 948 (2d Cir. 1986)).

[34] *Id.* (citing *Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir. 1982)).

present in this case, was sufficient to support withdrawal of the plea. There being no holding of the Supreme Court regarding the issue presented, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[35] Accordingly, Bonner is not entitled to relief under his fourth ground.

## V. CONCLUSION AND ORDER

Bonner is not entitled to relief on the remaining ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[36] To the extent the issues raised in the petition were addressed by the Albany County Court, no reasonable jurist could find that the decision was "objectively unreasonable." Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[37]

The Clerk of the Court is to enter final judgment accordingly.

Dated: October 6, 2009.

                                                          /s/ James K. Singleton, Jr.
                                                          JAMES K. SINGLETON, JR.
                                                          United States District Judge

---

[35] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, ___, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[36] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[37] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

APPENDIX

**EXCERPTS FROM PLEA COLLOQUY**
[DOCKET 18-3, PP. 96 – 97, 101 – 102]

THE COURT:  Ivan Bonner.

Let's bring up Mr. Bonner, please.

Let the record reflect this is Ivan Bonner.  He is here with his attorney, Mr. Dorsman.  People represented by Mr. Calderon.

This matter comes on after much discussion had among the attorneys and the Court.  The result is as follows: should  defendant plead guilty to the charge of robbery in the second degree, no promise other than I'll listen very carefully to all the information that your attorneys submit to me, the presentence report memorandum by the defense.  The Court agrees there will be no effort made to seek to have him classified as a persistent felony offender or persistent violent felony offender.  Is that your understanding Mr. Calderon?

MR. CALDERON:  It is, your Honor.

THE COURT:  That the People have agreed they would not seek to call him to testify at the trial of the co-defendant.  It is conditioned by the fact there must be an allocution sufficient sustain the plea here.  Is that your understanding?

MR. DORSMAN:  Yes, your Honor.

THE COURT:  Mr. Bonner, is that what you want to do.

THE DEFENDANT:  Yeah.

\* * * *

THE COURT:  And you give up your right to appeal this process we are going through.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Bottom line, if upon entry of  your plea here I set sentence for several weeks to get a presentence report, as long as I give full and fair consideration to all the information submitted to me before sentence, then in essence you have got what you bargained for.  Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT:  Other than what I've just said to you, has anyone made you any other kind of promise in order to get you to plead guilty here?

THE DEFENDANT: No.

**TRANSCRIPT OF SENTENCING**
[DOCKET 18-3, PP. 106 – 109]

THE COURT: Ivan Bonner is here with Mr. Dorsman. The People are represented by Mr. Torncello. This matters [*sic*] comes on for sentencing, the defendant previously on the 8th of this April having pled guilty to robbery in the second degree.

A pre-sentence report now having been prepared, have you had a full chance to review it, Mr. Dorsman?

MR. DORSMAN: Yes, I have, Your Honor.

THE COURT: Any factual discrepancies which you'd wish to note?

MR. DORSMAN: No, Your Honor.

THE COURT: Mr. Torncello, the People wish to be heard in reference to sentence?

MR. TORNCELLO: No, thank you.

THE COURT: Mr. Dorsman?

MR. DORSMAN: Your Honor, I'm just going to review the Special Information for a minute with my client.

(Whereupon, Counsel and the Defendant confer.)

THE COURT: Let the record reflect that Mr. Torncello has handed up to the Court and provided a copy of a Special Information charging a predicate offense, namely a conviction for criminal possession of a Controlled substance in the third degree. Defendant got four and a half to nine years, and on criminal possession of a weapon got three and a half to seven years, and that was in 1989 out of Queens, and those sentences would have carried him within the 10-year period in which to determine predicate status.

MR. DORSMAN: Your Honor, I have gone over the information with him and he doesn't deny that he's the same person that was previously convicted, and there are no appeals or anything pending, so I don't know of any ground or constitutionality or otherwise.

THE COURT: And he was represented by an attorney at that time, correct?

THE DEFENDANT : Yeah

MR. DORSMAN: Yes.

THE COURT: Based upon your statement, as well as those of your client, for purposes of today's proceedings, I declare him to be a second felony offender.

Mr. Torncello, the people wish to be heard further?

MR. TORNCELLO: No, thank you, Your Honor.

THE COURT: Mr. Dorsman?

MR. DORSMAN: Your Honor, I did have a chance to review the presentence report. I know my client has a lengthy criminal history. However, he did come forward on this case and admit his guilt. I'd ask the Court to consider less than 15 years.

THE COURT: Mr. Bonner, did you wish to be heard.

THE DEFENDANT: Yes, I would. I'd just like to say -- I'd like to apologize to the victims and to my family.

THE COURT: Any legal cause to show why sentencing should not now be pronounced?

Mr. DORSMAN: No, Your Honor.

THE COURT: Having reviewed carefully the pre-sentence report, I find no basis to vary from the negotiated plea. Accordingly, it is the judgment of this Court that you be sentenced to a determinate sentence of 14 years with a five-year period of post-release supervision imposed. Mandatory surcharge and victim impact fee must be and are imposed, deducted from inmate's funds.

Defendant remanded.

THE DEFENDANT: I thought copped out to 15.

THE COURT: What?

THE DEFENDANT: I thought I pled guilty to 15.

THE COURT: I just gave you 14. Do you want me to give you 15 instead?

THE DEFENDANT: You said 14 what?

THE COURT: Five years post-release.

MR. DORSMAN Five years post-release supervision.

(Whereupon, the proceedings in the above-entitled matter were concluded, this date.)

### Transcript November 25, 2002 Hearing

[Docket 18-3, pp. 18 – 19]

THE COURT: Ivan Bonner.

Let the record reflect this is Ivan Bonner. This case was conferenced extensively over the last couple weeks. An offer was made at the end of last week and we put it on today for a response, namely that should defendant plead guilty to robbery in the second degree, to be sentenced to no more than a ten year determinate sentence, post-release supervision being a mandated minimum, second felony offender. Even though defendant has at least four prior felony convictions I would not seek to have him treated as a persistent felony offender.

      This plea was conditioned upon, if necessary, truthful testimony at the trial of his co-defendant. Mr. Dorsman.

      THE DEFENDANT: Your Honor, I was going to taken ten years flat. They didn't say nothing to me about testifying again. I was explaining to my lawyer that statement. I don't know nothing about the statement. If you look at the videotape of the robbery, your Honor --

      THE COURT: Sir, anything you say here can be used against you. Excuse me. Excuse me.

      THE DEFENDANT: I -- I --

      THE COURT: Don't start talking about it because if you don't take a plea the things you're saying here can be used against you at your trial if you reject the plea bargain. So don't say a word with respect to the transaction, please. It's for you to accept or reject the plea bargain. Simple as that, sir.

      THE DEFENDANT: I want to take ten years. Yes.

      THE COURT: But it's conditioned upon if McEaddy doesn't plead, I don't know if he is going to or not, that it's necessary for you to testify at trial.

      THE DEFENDANT: But what I'm saying to you, your Honor, is that I didn't do anything with McEaddy. I don't have --

      THE COURT: Fair enough. What's your position?

      MR. MUlA: Judge, especially in light of his comments at this point, without his cooperation the People can't take this plea and the plea offer at this time is withdrawn.

      THE COURT: Okay.

                         (Matter concluded this date)